**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| VICKI HARRIS and MICHAEL HARRIS,<br>    Plaintiff,<br>v.<br>MERCER GLOBAL ADVISORS INC.,<br>E*TRADE SAVINGS BANK, and E*TRADE<br>SECURITIES, LLC,<br>    Defendants. | Civil Action No.<br>1:23-cv-01675-SDG |

**OPINION AND ORDER**

This matter is before the Court on Defendant Mercer Global Advisors Inc.'s (Mercer) motion to dismiss [ECF 20]. With the benefit of oral argument, and for the foregoing reasons, Mercer's motion is **GRANTED IN PART** and **DENIED IN PART.** Plaintiffs' breach of fiduciary duty claim is dismissed, but their remaining claims shall proceed.

**I.    BACKGROUND**

This case arises out of a dispute over the distribution of a decedent's investment account. The decedent, Lois Walsh, had an E-Trade investment account that she had managed herself for ten years,[1] and for which she had set up custom beneficiary designations.[2] The custom designations included Walsh's

---

[1]    ECF 16, at 4 ¶ 10.

[2]    *Id.* ¶ 11.

daughter, Plaintiff Vicki Harris;[3] Plaintiff Michael Harris; and Vicki's three brothers, Robert, Rick, and Roger Toepfert.[4] Six months before she died, Walsh opened two new E-Trade investment accounts, to be managed by the investment advisory firm Mercer,[5] and into which Walsh transferred her entire self-managed account balance.[6] The two Mercer-managed accounts came with default beneficiary designations, which were not updated to match the custom designations from Walsh's self-directed account.[7]

Walsh died on July 8, 2020.[8] Soon thereafter, E-Trade and Mercer discovered the beneficiary-designation discrepancy between Walsh's self-managed and Mercer-managed accounts,[9] which operated to reduce Vicki's distribution from 30% of the account balance (under the custom designation) to 25% (under the default designation), and Michael's from 10% to nothing.[10] E-Trade, perhaps due

---

[3]   *Id.* ¶ 9.

[4]   *Id.*

[5]   *Id.* at 5 ¶ 15.

[6]   *Id.*

[7]   *Id.* at 7–8 ¶ 20.

[8]   *Id.* at 4 ¶ 9.

[9]   *Id.* at 8 ¶ 21.

[10]  ECF 1–2, at 2.

to the discrepancy, has yet to disburse the funds from the Mercer-managed accounts to anyone.[11]

The Harrises sued E-Trade and Mercer seeking monetary and injunctive relief under three causes of action.[12] The Harrises subsequently entered into arbitration with E-Trade,[13] and, at oral argument on the instant motion, abandoned their Georgia Fair Business Practices Act claim against Mercer and withdrew their prayer for injunctive relief.[14] Remaining before the Court, therefore, are two claims against Mercer for monetary damages under Georgia law, one for breach of fiduciary duty[15] and the other for negligent misrepresentation.[16] Mercer moves to dismiss both claims on three alternative grounds:[17] (1) lack of subject matter jurisdiction;[18] (2) failure to join necessary parties;[19] and (3) failure to state a claim.[20]

---

[11]  ECF 16, at 9 ¶ 26.

[12]  *Id.* at 10 ¶ 27.

[13]  ECF 22, at 4.

[14]  Oral Argument (Mar. 5, 2024).

[15]  ECF 16, at 11–12 ¶¶ 35–40.

[16]  *Id.* at 14–15 ¶¶ 44-47.

[17]  ECF 20.

[18]  *Id.* at 10–14.

[19]  *Id.* at 8–10.

[20]  *Id.* at 14–22.

## II. DISCUSSION

### A.   The Harrises Have Suffered an Injury-In-Fact.

Mercer argues that this case must be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, because the Harrises have not suffered an injury-in-fact.[21] As a preliminary matter, the Court notes that Mercer's attack on the Court's jurisdiction is facial, not factual. Mercer's brief cites at length to case law distinguishing between facial and factual jurisdictional attacks before asserting that no justiciable controversy exists "as a matter of fact"[22] — suggesting, if not explicitly declaring, a *factual* challenge on the Court's jurisdiction. The case law that Mercer cites, however, establishes that Mercer's argument is a *facial* one. As Mercer points out, a facial attack asserts that the allegations in the pleadings, taken as true, fail to establish jurisdiction. *Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir. 1999). A factual attack, by comparison, asserts that the existence of specific facts, which must be proven by evidence, deprives the court of jurisdiction. *Id.* And here, as it admitted at oral argument, Mercer's attack relies on the allegations in

---

[21] ECF 20, at 10. Mercer characterizes its standing challenge as about ripeness. *Id.* Mercer's argument, however, is better construed as asserting that the Harrises have not suffered an injury-in-fact.

[22] *Id.* at 13.

the complaint and not on extrinsic evidence.[23] Thus, its jurisdictional attack is facial.

In its facial attack, Mercer argues that the complaint fails to allege an injury-in-fact since E-Trade is yet to disburse funds from the Mercer-managed accounts to anybody. In Mercer's words, "[b]ecause no funds have been distributed to any beneficiary, neither plaintiff has suffered any harm, and no damages could have been incurred."[24] In addressing Mercer's standing challenge, it is helpful to understand what the Harrises have alleged against *Mercer* specifically, given that the complaint asserted claims against both Mercer *and* E-Trade. The Harrises' allegations against Mercer are as follows:

1. That Mercer should have required Walsh to provide beneficiary designations for the Mercer-managed accounts;[25]

2. That if Mercer had done so, the Harrises would have received distributions from the E-Trade accounts over three years ago;[26]

3. That Mercer negligently or knowingly provided the Harrises with false information regarding the accounts' beneficiary designation being "already set up;"[27] and

4. That Mercer is liable for the delay in distribution, along with any difference between what the Harrises ultimately receive from E-

---

[23]   Oral Argument (Mar. 5, 2024).

[24]   ECF 20, at 13.

[25]   ECF 16, at 12 ¶ 37.

[26]   *Id.* at 10 ¶ 27.

[27]   *Id.* at 12 ¶ 38; *id.* at 14 ¶ 45.

>Trade and what they would have been entitled to receive under Walsh's custom beneficiary designations.[28]

The Harrises' complaint focuses in particular on a meeting between Vicki Harris, Mercer employee Nick Campbell, and Walsh's attorney.[29] The meeting was convened as an "emergency" response to Walsh's entry into hospice care.[30] The Harrises specifically take issue with Campbell's statement during the meeting that the beneficiary designations on Walsh's Mercer-managed accounts were "already set up."[31] Vicki allegedly understood Campbell's "already set up" statement to mean that the custom beneficiary designations on Walsh's self-managed account had been applied to her Mercer-managed accounts.[32] According to the Harrises, Campbell's "already set up" statement was a false statement that makes Mercer—as Campbell's employer—liable for the Harrises' failure to receive immediate disbursements from the Mercer-managed accounts in accordance with Walsh's custom beneficiary designations.

These allegations identify a justiciable controversy. Mercer's alleged wrong—its failure to update beneficiary designations on Walsh's accounts—has

---

[28]  *Id.* at 16 ¶ 50.

[29]  *Id.* at 6–7 ¶ 19a. Plaintiffs' complaint labelled two consecutive paragraphs as paragraph 19. The Court will cite to them as "¶ 19a" and "¶ 19b."

[30]  *Id.*

[31]  *Id.*

[32]  *Id.* at 7 ¶ 19b.

already occurred. The Harrises' alleged injury—their failure to receive distributions in accordance with Walsh's custom beneficiary designations upon Walsh's death—is likewise in the past. And the relief that the Harrises seek—the difference between what they would have received under the custom designations and what they actually received under the default designations—is discrete and calculable. Thus, the Harrises' allegations demonstrate the existence of "an invasion of a legally protected interest" that is both "actual" and "concrete," and they have suffered an injury-in-fact that gives them standing to bring this suit. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

### B.     The Toepfert Brothers Are Not Necessary Parties.

In the alternative, Mercer argues that this case must be dismissed under Fed. R. Civ. P. 12(b)(7) because the Toepfert brothers are necessary parties, and their joinder would destroy complete diversity.[33] Specifically, Mercer's position is that, under Fed. R. Civ. P. 19(a)(1)(A), complete relief cannot be afforded here without joining the Toepfert brothers because the Harrises seek injunctive relief that would reduce the Toepferts' distributions from Walsh's accounts.[34] But the Harrises withdrew their request for injunctive relief at oral argument, and are now seeking only money damages. Whether Mercer is liable to the Harrises in tort has no

---

[33]   ECF 20, at 8.

[34]   *Id.* at 9.

impact on the Toepferts' interests in Walsh's investment account. Thus, this case no longer implicates Rule 19.

### C. The Complaint States a Claim for Negligent Misrepresentation, But Not for Breach of Fiduciary Duty.

Finally, in the alternative, Mercer argues that this case must be dismissed under Fed. R. Civ. P. 12(b)(6) because both of the Harrises' remaining causes of action fail to state a claim. To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts that, when taken to be true, plausibly entitle the plaintiff to relief. *Ingram v. Kubik*, 30 F.4th 1241, 1255 (11th Cir. 2022). The Eleventh Circuit uses a two-step process to evaluate complaints under Rule 12(b)(6). First, courts must identify purported factual allegations that merely assert legal conclusions and disregard them. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018). Second, courts must assume the truth of all non-conclusory allegations and determine whether they can support a reasonable inference of the defendant's liability. *Id.* at 1335. The plaintiff's non-conclusory allegations must be construed "in the light most favorable to the plaintiff." *Henley v. Payne*, 945 F.3d 1320, 1326 (11th Cir. 2019). Here, the Court finds that the Harrises have stated a facially plausible claim for negligent misrepresentation, but not for breach of fiduciary duty.

### 1. The Harrises Have Plausibly Alleged Mercer's Negligent Misrepresentation.

The Harrises have stated a claim for negligent misrepresentation. Negligent misrepresentation in Georgia has three "essential" elements: (1) negligent supply of false information to foreseeable persons; (2) reasonable reliance; and (3) proximate economic injury. *Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.*, 267 Ga. 424, 426 (1997). However, these elements undersell the difficulty of establishing a negligent misrepresentation claim under Georgia law where, as here, the plaintiff is seeking purely economic damages from a defendant with whom no privity exists. *Robert & Co. Assocs. v. Rhodes-Haverty P'ship*, 250 Ga. 680, 681 (1983). In such cases, the first element has been interpreted to require the plaintiff to prove that "a known third party's reliance was the desired result of the representation," *id.*, meaning a plaintiff can only recover if she proves both that the person who supplied the false information was "*manifestly aware of the use* to which the information was to be put," and also that the information was given "*for the purpose of inducing third parties to rely and act upon the reliance.*" *Bates & Assocs., Inc. v. Romei*, 207 Ga. App. 81, 84 (1993) (emphasis in original). Thus, to state a claim for negligent misrepresentation, the Harrises' allegations must give rise to two reasonable inferences. First, the complaint must plausibly permit the inference that Campbell was *manifestly aware* of the use to which Vicki would put his assurance that the Mercer-managed account designations were "already set up."

Second, the complaint must plausibly permit the inference that Campbell told Vicki that the account designations were "already set up" for the *purpose* of inducing Vicki's reliance.

Here, the Court rules that the factual allegations in the complaint, taken to be true, reasonably support both inferences. Campbell's statement allegedly came in the context of an "emergency meeting" between Vicki, Walsh's attorney, and Campbell upon Walsh's admission into hospice. It can be inferred from these allegations that the meeting was convened to discuss Walsh's Mercer-managed accounts, and that Campbell participated in the meeting in his capacity as Walsh's investment account manager. In that context, it is reasonable to infer Campbell's manifest awareness that Vicki would trust his representations about the status of Walsh's accounts, and also to infer that Campbell made representations about Walsh's accounts for the purpose of influencing Vicki's conduct. In other words, the allegations plausibly support the reasonable inference that Campbell both knew Vicki would trust what he told her about Walsh's accounts, and provided Vicki with information about those accounts for the purpose of inducing a certain action: in this case, to induce Vicki *not* to act, based on his representation that there was nothing more for her to do to set up the Mercer-managed accounts consistent with Walsh's wishes. Thus, the Harrises have sufficiently alleged that Mercer (1) "negligent[ly] suppl[ied] … false information to foreseeable persons."

The Harrises' allegations also support the reasonable inference of (2) reliance and (3) economic damages. As to reasonable reliance, Vicki's alleged reliance on Campbell's assurances—coming as they did during an emergency meeting convened in response to Walsh's failing health, in which Campbell participated as Walsh's account manager—was not unreasonable as a matter of law. And as to proximate economic injury, the allegations support the reasonable inference that Campbell's misrepresentation induced Vicki *not* to act: induced her *not* to ensure that Walsh's beneficiary designations were updated, and *not* to ask Walsh to update her beneficiary designations. The Court cannot rule as a matter of law that Vicki's inaction was not the proximate cause of the Harrises' reduced distribution from Walsh's investment accounts. Thus, the complaint states a claim for negligent misrepresentation.

### 2. The Harrises Have Failed to Allege a Breach of Fiduciary Duty.

However, the Harrises have failed to state a claim for breach of fiduciary duty. Breach of fiduciary duty under Georgia law has three elements: (1) the existence of a fiduciary duty, (2) a breach of that duty, and (3) damages resulting from the breach. *Ewing v. Scott*, 366 Ga. App. 466, 472 (2023). And here, the Harrises' claim fails because it is not plausible that Mercer, as Walsh's financial advisor, owed Vicki any fiduciary duties. A fiduciary duty exists "where one party is so situated as to exercise a controlling influence over the will, conduct, and

interest of another," or where the duty is imposed by "a similar relationship of mutual confidence." O.C.G.A. § 23-2-58. The duty may "aris[e] from nature, [be] created by law, or result[ ] from contracts." *Id.* But it must be proven by the party asserting its existence. *Crawford v. Crawford*, 134 Ga. 114, 119 (1909). And though the duty's existence is generally a question for the jury, *Ray v. Hadaway*, 344 Ga. App. 642, 645 (2018), courts can rule that no duty exists as a matter of law where "there is a complete absence of evidence of such a [confidential] relationship." *Levine v. Suntrust Robinson Humphrey*, 321 Ga. App. 268, 281 (2013).

The Georgia Court of Appeals has held, as a matter of law, that "an allegation that a defendant had been a close personal, confidential, and business adviser to the plaintiff [does] not establish the existence of a confidential relationship within the meaning of O.C.G.A. § 23-2-58." *Bowen v. Hunter*, 241 Ga. App. 204, 208 (1999) (citing *Charles v. Simmons*, 215 Ga. 794, 796 (1960)). The appellate court's reasoning in *Bowen* is instructive. *Bowen* was, like this case, a dispute about a decedent's estate, with remarkably analogous facts. In *Bowen*, the attorney for the estate's administrator told the decedent's mother and sister that they had no interest in the estate. *Bowen*, 241 Ga. App. at 208. In fact, the attorney's statement was wrong. *Id.* at 205. The mother and sister sued, arguing that the attorney breached his fiduciary duty by giving them false information about their entitlement to the estate. *Id.* at 208.

The Georgia Court of Appeals rejected their argument. First, the appellate court reasoned that the fiduciary duty owed by the attorney to the estate's *administrator* did not extend by operation of law or contract to the estate's *potential heirs*. *Id.* Second, the appellate court reasoned that the specific facts of the case—the mother and sister's trust in the attorney's statement about the estate that turned out to be false—did not otherwise give rise to a fiduciary duty under O.C.G.A. § 23-2-58. *Id.* at 208.

*Bowen* controls the Harrises' breach of fiduciary duty claim, which is premised on the idea that Mercer owed Vicki fiduciary duties "with regard to Walsh's IRA accounts."[35] Like in *Bowen*, Campbell's alleged misrepresentation concerned the decedent's family member's entitlement to a part of the decedent's estate. But at the point at which the alleged tort occurred—the emergency meeting between Vicki, Campbell, and Walsh's attorney—Walsh was still alive and thus the Harrises were only *potential* beneficiaries.[36] *Bowen* teaches that, at the time of the meeting, Mercer's fiduciary duty to Walsh regarding her investment accounts did not extend to Vicki. Nor, under *Bowen*, can the allegation that Vicki trusted Campbell given his position as an investment advisor and confidant give rise to a

---

35   ECF 16, at 10 ¶ 29.

36   In their response to Mercer's motion to dismiss, the Harrises themselves admit that they are "potential heirs." ECF 22, at 2.

fiduciary duty. Because *Bowen* makes clear that the Harrises' allegations cannot establish the existence of a fiduciary duty between Mercer and Vicki, the Harrises' breach of fiduciary duty claim must be dismissed.

### 3. The Harrises' Claim for Fees Survives.

The Harrises have also asserted a claim for attorneys' fees under O.C.G.A. § 13-6-11, which provides for the recovery of fees "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." Because the Harrises' negligent misrepresentation claim survives the instant motion to dismiss, their claim for fees survives with it.

### III. CONCLUSION

Mercer's motion to dismiss [ECF 20] is **GRANTED IN PART and DENIED IN PART**. The Harrises' breach of fiduciary duty claim is dismissed. Mercer is **ORDERED** to Answer the surviving portions of Harrises' Complaint within 14 days of this Order, and the parties are **ORDERED** to file an amended Joint Preliminary Report and Discovery Plan within 30 days of Mercer's Answer.

**SO ORDERED** this 31st day of March, 2024.

Steven D. Grimberg
United States District Judge